1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                            NORTHERN DISTRICT OF CALIFORNIA

10                                   SAN JOSE DIVISION

11   IVONNE GUERRERO, et al.,            )      Case No.: C 08-0307 PVT
                                         )
12                    Plaintiffs,        )      **ORDER DENYING DEFENDANTS'**
                                         )      **MOTION FOR SUMMARY**
13          v.                           )      **JUDGMENT**
                                         )
14   COUNTY OF SAN BENITO, et al.,       )
                                         )
15                    Defendants.        )
     _____)

16

17          On March 3, 2009, the parties appeared before Magistrate Judge Patricia V. Trumbull for

18   Defendants' Motion for Summary Judgment.[1]  Based on the briefs and arguments submitted,

19          IT IS HEREBY ORDERED that Defendants' motion is DENIED for the reasons discussed

20   below.

21   **I.      FACTUAL BACKGROUND**

22   **A.      UNDISPUTED FACTS**

23          This action arises out of the shooting of Israel Guerrero (hereinafter "Guerrero") by Deputy

24   Sheriff Michael Rodrigues (hereinafter "Rodrigues") during an altercation that occurred along State

25   Route 156 in San Juan Bautista, California.  There was a confrontation between Rodrigues and

26   Guerrero, and at some point Rodrigues shot Guerrero.  Guerrero died later that day.

27

28   _____

      [1]       The holding of this court is limited to the facts and the particular circumstances
     underlying the present motion.

                                    ORDER, *page 1*

1      **B.    FACTS ASSERTED BY DEFENDANTS**[2]

2      Defendant Rodrigues was driving in his patrol car accompanied by his minor daughter, Kayla

3    Rodrigues.[3]  As they were driving west along State Route 156, they came upon two vehicles parked

4    on the eastbound shoulder about 50 feet apart.  Rodrigues initially surmised there may have been an

5    accident.  He pulled up to the first vehicle, a light to medium colored full-sized truck and asked the

6    driver if he was injured or needed medical attention.  The driver did not respond, and instead he kept

7    motioning aggressively to the car behind him.  Rodrigues continued westbound to the second car, on

8    which the driver's side of the windshield was shattered, and the back passenger window on the

9    driver's side was also broken.  The driver's door was wide open.  The trunk lid was open and

10   Guerrero was standing near the rear of the car taking items out of the trunk and throwing them on the

11   ground.  Rodrigues called for backup, turned his patrol car around and pulled up behind Guerrero's

12   car.  When Rodrigues approached Guerrero, Guerrero took out a pair of jumper cables and raised

13   them aggressively at him.  Rodrigues observed Guerrero sweating profusely and appeared to be in an

14   aggravated state.  Rodrigues believed Guerrero was under the influence of drugs.  Rodrigues

15   observed a tattoo on Guerrero's body, which he recognized as signifying gang affiliation.

16      Guerrero alternated between complying with Rodrigues' orders (such as to put his hands on

17   the car) and aggressively defying Rodrigues' orders (such as taking his hands off the car and

18   charging at Rodrigues).  Rodrigues first tried to control Guerrero using his taser and then his baton,

19   without success.  Deputy Penney attempted to tase Guerrero, but his taser first failed to deploy and

20   then the prongs failed to hit Guerrero.  Shortly thereafter, Rodrigues withdrew his gun.  Guerrero

21   kept approaching Rodrigues and Rodrigues feared for his life.  Rodrigues thought Guerrero would

22

23          [2]    The version of facts set forth in this section are based on the evidence submitted by
24   Defendants.

25          [3]    Plaintiffs have not disputed that Rodrigues' daughter was with him in his patrol car when
     they encountered Guerrero.  However, the court notes that two separate eyewitnesses testified in their
26   respective depositions that the girl was in the car of the man who was shot (Guerrero), and that she was
     moved to a patrol car by a female officer.  (*See*, Declaration of Michael D. Liberty in Opposition to
27   Defendants Michael Rodrigues, County of San Benito and Curtis Hill's Motion for Summary Judgment
     (docket no. 66), Exh. D at 44:21 – 45:6 and Exh. E at 30:18–25 & 33:14–22.)  This factual discrepancy
28   is further grounds for denying summary judgment.  If Rodrigues' minor daughter really *was* initially in
     *Guerrero's* car, then some of the facts – such as the shattered windows on the driver's side of Guerrero's
     car – could raise other inferences that favor the non-moving parties.

1  attempt to grab his gun.  Guerrero charged at Rodrigues, and  Rodrigues then shot Guerrero in the

2  abdomen.  Guerrero was under the influence of cocaine and methamphetamine at the time of his

3  death, and such intoxication was a cause of his death.

4       **C.**    **FACTS ASSERTED BY PLAINTIFFS**[4]

5      Neither Rodrigues nor Deputy Penney tested their taser prior to the start of their work day,

6  and both tasers malfunctioned during the incident.  Rodrigues shot Guerrero as Guerrero was turning

7  away from him.  Rodrigues' daughter, Kayla, was present during the confrontation and saw her

8  father shoot Guerrero as Guerrero was walking or turning away.[5]  Guerrero did not try to grab

9  Rodrigues' gun, and did not try to attack the deputies or act aggressively towards them.  Guerrero

10  was standing with his hands up as if to give up.  The gunshot was a contributing cause of death.

11      Sheriff Hill determines whether or not a deputy sheriff's employment should be terminated.

12  He knew Rodrigues had a history of misconduct throughout his time on the force: Rodrigues had

13  "pistol whipped" Deputy Klauer's cousin; he was accused of spousal rape in February 2006; he

14  attempted to rape a prostitute in a Nevada hotel room in May 2004; and he shot an unarmed man in

15  the 1980s.  Sheriff Hill was indifferent to Rodrigues' misconduct, and failed to terminate Rodrigues'

16  employment.

17

18  **II.**    **SUMMARY JUDGMENT STANDARD**

19      The purpose of summary judgment "is to isolate and dispose of factually unsupported claims

20  or defenses."  *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986).  To obtain summary judgment, a

21  party must demonstrate that no genuine issue of material fact exists for trial, and that based on the

22  undisputed facts, he is entitled to judgment as a matter of law.  *Id*. at 322.  The moving party "bears

23  the initial responsibility of informing the district court of the basis for its motion, and identifying

24

25      [4]    The version of facts set forth in this section are based on the evidence submitted by

26  Plaintiffs.

27      [5]    The court views this representation by Plaintiffs as an offer of proof.  Although the transcript of Kayla's testimony was later filed, Plaintiffs failed to authenticate the deposition transcript and failed to provide citations to indicate which portions of the transcript support their opposition, despite the court's direction that they do so.  The court does not rely on the transcript in reaching this decision.

28

1  those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file,

2  together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of

3  material fact." *Id*. at 323. "If a moving party fails to carry its initial burden of production, the non-

4  moving party has no obligation to produce anything..." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*,

5  210 F.3d 1099, 1102-03 (9th Cir. 2000).

6      The court must draw all reasonable inferences in favor of the nonmoving party. *Masson v.*

7  *New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991); *Matsushita Elec. Indus. Co. v. Zenith Radio*,

8  475 U.S. 574, 588 (1986). Summary judgment is not warranted if "the evidence is such that a

9  reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*,

10  477 U.S. 242, 248 (1986).

11

12      **III.   DISCUSSION**

13      **A.   A GENUINE ISSUE OF MATERIAL FACT AS TO GUERRERO'S BEHAVIOR AT THE
        TIME OF THE SHOOTING PRECLUDES SUMMARY JUDGMENT ON PLAINTIFFS' FIRST
14      THROUGH SIXTH CAUSES OF ACTION**

15      Legal issues regarding whether Defendant Rodrigues was negligent in shooting Guerrero,

16  whether the shooting deprived Guerrero of his Fourth Amendment right to be free of unreasonable

17  seizure, and whether Defendant Rodrigues is entitled to any form of immunity for the shooting, all

18  depend on a factual determination of what Guerrero was doing at the time he was shot. Because

19  there is a genuine dispute of material fact as to what Guerrero was doing at the time he was shot,

20  none of the foregoing legal issues can be resolved on summary judgment.

21      *1.   Officers' State Law Duty of Care (regarding Negligence and Assault & Battery)*

22      Police officers have a duty to use reasonable care in employing deadly force. *See Munoz v.*

23  *City of Union City*, 120 Cal.App.4th 1077, 1099-1100 (2004), citing *Grudt v. City of Los Angeles*,

24  2 Cal.3d 575 (1970), and *Munoz v. Olin*, 24 Cal.3d 629 (1979).

25      *2.   Deprivation of Constitutional Rights*

26      To sustain a section 1983 civil rights action, a plaintiff must show "(1) that the conduct

27  complained of was committed by a person acting under color of state law; and (2) that [such]

28  conduct deprived the plaintiff of a federal constitutional or statutory right." *Wood v. Ostrander*, 879

1    F.2d 583, 587 (9th Cir. 1989).

2        The first inquiry in any section 1983 suit is to identify the precise constitutional violation

3    with which the defendant is charged." *Berman v. City of Daly City*, 21 Cal.App.4th 276, 286 (Cal.

4    Ct. App. 1993).  An officer's use of deadly force constitutes a "seizure" that is subject to the

5    reasonableness requirement of the Fourth Amendment.  *See Tennessee v. Garner*, 471 U.S. 1, 7, 11

6    (1985).  The question of whether the use of force by police officers is reasonable is ordinarily an

7    issue to be determined by the jury.  *See Oglesby v. City of Los Angeles*, 902 F.2d 40 (9th Cir. 1990).

8        "Under the Fourth Amendment, officers may only use such force as is 'objectively

9    reasonable' under the circumstances."  *See Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir.

10   2001) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)).  "The 'reasonableness' of a particular

11   use of force must be judged from the perspective of a reasonable officer on the scene, rather than

12   with the 20/20 vision of hindsight."  *See Graham*, 490 U.S. at 396; and *Hernandez v. City of*

13   *Pomona*, 145 Cal.App.4th 701, 717 (2006).  When determining whether the amount of force used

14   was reasonable, courts must balance "the nature and quality of the intrusion on the individual's

15   Fourth Amendment interests against the countervailing governmental interests at stake."  *Id.* at 396

16   (internal quotation marks omitted).

17        **3.    *Immunity***

18        Under California law, police officers are not immune from use of excessive force in making

19   an arrest, nor are they immune from liability for battery.  *Scruggs v. Haynes*, 252 Cal.App.2d 256,

20   267-268 (1967).  Qualified immunity applies to a plaintiff's federal law claim of excessive force, but

21   not to a California law claim of negligence.  *Robinson v. Solano County*, 278 F.3d 1007, 1016-1017

22   (9th Cir. 2002).

23        For purposes of Section 1983 claims, qualified immunity shields government officials from

24   civil liability where "their conduct does not violate clearly established statutory or constitutional

25   rights of which a reasonable person would have known."  *See Harlow v. Fitzgerald*, 457 U.S. 800,

26   818 (1982).  A police officer is entitled to qualified immunity from suit alleging excessive force

27   unless, under the "particularized" circumstances he faced at the time of his actions, it would have

28   been clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

1    *Saucier v. Katz*, 533 U.S. 194, 202 (2001).   The issue of qualified immunity requires a court to

2    determine: 1) whether the facts show the officer's conduct violated a constitutional right, and

3    2) whether the right was clearly established.  *See Pearson v. Callahan*, 129 S.Ct. 808, 816 (Jan. 21,

4    2009).  The court may evaluate the two prongs in any order.  *Id.* at 818.  It is the responsibility of the

5    jury, not the judge, to determine any disputed foundational or historical facts that underlie the

6    determination of whether an officer is entitled to qualified immunity.  *See Sinaloa Lake Owners*

7    *Ass'n v. City of Simi Valley*, 70 F.3d 1095, 1099-1100 (9th Cir. 1995).

8

9          **4.**    ***Genuine Issues of Material Fact Exists Regarding Guerrero's Behavior and the Reasonableness of Rodrigues' Use of Deadly Force***

10       Defendants claim that at the time of the shooting Guerrero was sweating profusely, appeared

11    agitated, and aggressively charged at Rodrigues.  They argue that under those circumstances deadly

12    force was reasonable because Rodrigues was acting in self defense.

13       Plaintiffs contend that Guerrero was not acting aggressively towards Rodrigues, and that in

14    any event Rodrigues could have used less lethal methods to restrain Guerrero.

15       It is undisputed that Guerrero was unarmed at the time he was shot.  Eyewitness Marta Flores

16    testified at deposition that Guerrero was not trying to attack the officers and was not physically

17    aggressive towards the officers.  Eyewitness Kayla Rodrigues has stated that her father shot Guerrero

18    while Guerrero was walking or turning away.  Summary judgment is not warranted on Plaintiffs'

19    first through sixth causes of action, because a jury could credit such testimony and find that:

20    1) Guerrero was not acting in a threatening manner towards the officers; 2) Rodrigues was not

21    exercising due care when he shot Guerrero; and 3) it was not objectively reasonable for Rodrigues to

22    shoot Guerrero.

23       **D.**   **MONELL CLAIM**

24       On Section 1983 against the County and Sheriff Hill in his official capacity, Defendants

25    contend that respondeat superior theory cannot be used to impose liability on municipalities, and

26    further contend that municipal defendants cannot be held liable when no constitutional violation

27    occurred.  Defendants argue that they did not violate any constitutional rights and that Plaintiffs

28    cannot set forth enough evidence to show a policy, custom or practice of the County or Sheriff Hill

1   to prove their claims.

2       "[A] local government may not be sued under § 1983 for an injury inflicted solely by its

3   employees or agents.  Instead, it is when execution of a government's policy or custom, whether

4   made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy,

5   inflicts the injury that the government as an entity is responsible under § 1983."  *Monell*, 436 U.S. at

6   694.  A municipality is liable if the chief law enforcement policymaker ratifies the actions of the

7   officers by approving of their actions or by failing to impose discipline after the fact.  *See City of*

8   *St. Louis v. Praprotnik*, 485 U.S. 112, 126-127 (1988); *Monell*, 436 U.S. at 694.  Such ratification is

9   sufficient proof of municipal policy or custom and is sufficient to impose liability on the

10  municipality.  *See Monell*, 436 U.S. at 694.

11       Plaintiffs submitted evidence of examples of Rodrigues' conduct that they argue should have

12  caused Sheriff Hill and the County to remove Rodrigues from his position.  Said conduct includes

13  allegations of picking up a prostitute, pistol whipping a co-worker's cousin, attempted spousal rape,

14  and previously shooting an unarmed man.  Plaintiffs contend that failing to remove or discipline

15  Rodrigues established a policy of indifference that ultimately lead to Guerrero's death.  There is a

16  genuine issue of material fact whether the County and Sheriff Hill's inaction in light of Rodrigues'

17  prior misconduct establishes official policy or custom that contributed to Guerrero's death.

18       **E.    PLAINTIFFS' CLAIM AGAINST SHERIFF HILL IN HIS INDIVIDUAL CAPACITY**

19       On Plaintiffs' Section 1983 cause of action against Sheriff Hill in his individual capacity,

20  Defendants contend that discretionary immunity applies because Sheriff Hill exercised his discretion

21  in the supervision, training, discipline and control of Rodrigues.  Further, Defendants argue that a

22  public employee is not liable for his acts or omissions if exercising due care based on an objectively

23  reasonable standard.

24       Supervisory liability is imposed against a official in his individual capacity for his "own

25  culpable action or in the training, supervision, or control of his subordinates; for his acquiesce[nce]

26  in the constitutional deprivations of which [the] complaint is made, or for conduct that showed a

27  reckless or callous indifference to the rights of others.  Where the failures to supervise are those of

28  the policymaker, the municipality is liable."  42 U.S.C. § 1983*;  Larez v. City of Los Angeles*, 946

F.2d 630, 646 (9th Cir. 1991); *Menotti v. City of Seattle*, 409 F.3d 1113 (9th Cir. 2005).  "A policy of gross negligence in training or supervision gives rise to section 1983 liability." *Berquist v. County of Cochise,* 806 F.2d 1364, 1370 (9th Cir. 1986).

Plaintiffs argue that Sheriff Hill's indifference and subsequent inaction exposes him to liability.  Plaintiffs contend that Sheriff Hill had the opportunity and means to terminate Rodrigues and was aware of Rodrigues' conduct during his employment at the Sheriff's Department.  Further, Plaintiffs argue Sheriff Hill was not only in charge of at least one investigation regarding Rodrigues' conduct, but that he was completely indifferent to Rodrigues' misconduct and crimes and established such a policy of indifference within the department.  A genuine issue of material fact exists whether Sheriff Hill exercised an objectively reasonable standard of care in supervision of Rodrigues, or instead showed a "reckless or callous indifference to the rights of others" by allowing Rodrigues to remain on the force and carry a gun despite his record of volatile behavior.

**F.    SURVIVAL ACTION**

On Plaintiffs' seventh cause of action, Defendants contend that a survival action is limited to losses or damages incurred before death and does not include damages for pain, suffering and disfigurement.  They contend that the right to general damages for pain and suffering is lost as a matter of law by statue when Plaintiff dies.

 The Federal civil rights statutes contain no express provisions regarding survivorship claims and remedies.  *See* 42 U.S.C. § 1981 et seq.   Rather, courts are directed to look to state law to supply the applicable rules.  *See* 42 U.S.C. § 1988(a); *see also, Williams v. City of Oakland*, 915 F.Supp. 1074, 1075-1076 (N.D. Cal. 1996); *Garcia v. Super. Ct.*, 42 Cal.App.4th 177, 181-182 (1996). Federal courts are divided as to whether a survival action, including pain and suffering, is allowed in a Section 1983 action in California.  *See T.D.W. v. Riverside County*, 2009 WL 2252072 (C.D. Cal. Jul 27, 2009).  Some federal courts have allowed recovery for pain and suffering in a survival action under Section 1983, because precluding recovery for pain and suffering would be inconsistent with the purposes of the federal civil rights statute.  *See Williams,* 915 F.Supp. at 1077-1079; *see also, Guyton v. Phillips*,532 F.Supp. 1154, 1166-1167 (N.D. Cal. 1981), and *T.D.W. v. Riverside County*, 2009 WL 2252072.  Other federal courts have declined to do so.  *See Rosales v. City of Bakersfield,*

1  2007 WL 1847628, n. 11 (E.D. Cal. 2007).

2      This court finds the reasoning of *Williams* and its progeny most persuasive, and finds that

3  Plaintiffs may pursue survival claims for pain and suffering.

4      **H.   TRAINING AND/OR SUPERVISION OF DEPUTY SHERIFFS**

5      On Plaintiffs' eighth cause of action for negligent training and/or supervision against the

6  County and Sheriff Hill, Defendants contend discretionary immunity applies because Sheriff Hill

7  exercised his discretion in continuing to employ Rodrigues.  Second, Defendants argue that in

8  executing and enforcing laws, as public employees they are not liable for their acts or omissions

9  because they exercised due care based on an objectively reasonable standard.  Finally, Defendants

10  contend the County is immune by virtue of the deputies' immunity.

11      Inadequate police department supervision and discipline can be sufficient evidence of

12  municipality liability.  *See Larez supra* 946 F.2d at 646.  Further, the use of a grossly deficient

13  supervisory system affirmatively links a chief of police or sheriff and the municipality to

14  constitutional injury.  *Id.* at 646-648.  Thus, "whether a government entity has displayed a policy of

15  deliberate indifference is generally a question for the jury."  *See Oviatt v. Pierce*, 954 F.2d 1470,

16  1478 (9th Cir. 1992).

17      As discussed above, Plaintiffs contend the Defendants had knowledge of numerous

18  allegations of misconduct against Rodrigues.  The court finds a genuine issue of material fact

19  whether Defendants were negligent in the supervision and retention of Rodrigues.

20

21      **IV.  CONCLUSION**

22      Viewing the evidence in the light most favorable to the nonmoving party, the court finds that

23  there are genuine issues of material fact that preclude summary adjudication of any of Plaintiffs'

24  causes of action.  Thus, summary judgment is not warranted.

25  Dated: *11/23/09*

26

27  PATRICIA V. TRUMBULL

28  United States Magistrate Judge